**SIGMOND v. KERN.**

No. 1000.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 8, 1951.

Decided Jan. 25, 1951.

Leon A. Ransom, Washington, D. C., for appellant.

Herman Miller, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

A tenant appeals from a judgment for possession entered against him in the landlord-tenant branch of the Municipal Court. The suit had been brought by the owner of a dwelling house on the ground that he had in good faith contracted to sell the property for the immediate and personal use and occupancy as a dwelling by the purchaser, and that the contract of sale contained a representation by the purchaser that the property was being bought by him for such immediate and personal use and occupancy. This is one of the grounds on which a tenant may be evicted under our local Rent Act. Code 1940, Supp. VII, 45—1605(b) (3).

■ One of the tenant's contentions is that there was error in permitting plaintiff, after his case in chief had been presented, to offer certain exhibits. The record re-

cites that the court pointed out some discrepancies as to dates in testimony given at an earlier session, that plaintiff asked leave to produce certain clarifying written evidence as to the dates, and this he was permitted to do.[1] We think the matter does not merit detailed discussion. This was not a reopening of the case but an effort to explain discrepancies which developed earlier in the trial. The papers received in evidence shed light on the question in doubt and, in receiving them for that purpose, there was no impropriety, no abuse of discretion, and no prejudice to appellant.

We turn to the principal question in the case which is whether the evidence supported the finding of the trial judge that plaintiff had proved good faith and that he had contracted in writing to sell the property for the immediate use and occupancy as a dwelling by the purchaser.

■ We have previously ruled that in such cases good faith is usually a question of fact,[2] and that in testing the good faith of a suing landlord, all circumstances should be considered.[3] In the case before us, there was considerable evidence bearing on both sides of the question.

The facts on which the landlord relied to support his claim of good faith were these: That on May 22, 1950, he made a contract in writing to sell 53 R Street to one Simon and wife; that the contract contained a statement that the purchaser desired the property for his own immediate use and occupancy as a dwelling; that the purchaser, Simon, had come in answer to a sign in the window; that plaintiff testified that his purpose in bringing the suit was in order to get possession and go through with the sales contract with Simon; that plaintiff had been ill and his physician felt that the burden of managing his properties was impairing his health and had advised him to sell all his properties. The purchaser, Simon, testified that he was compelled to

1. We mention this again in footnote 4, infra.
2. Heindrich v. Dimas-Aruti, D.C.Mun. App., 42 A.2d 138. See also McSweeney v. Wilson, D.C.Mun.App., 48 A.2d 469.

3. Gould v. Butler, D.C.Mun.App., 31 A.2d 867.

vacate the property he and his wife were occupying because she had been served with notice to quit and a possessory action; that when he received the notice to quit his present home he had never met Kern; that he saw Kern's sign in the window and after inspecting No. 51, the house next door, which he was told was physically identical, and that No. 53 would be remodeled to suit him, he decided to buy No. 53; that he wanted it as a place to live in; that he needs a place; that he and his wife and her mother and maybe an adult son want to live there; that he owns no other property and was "desperate for a place to live."

Following are the features of the case which appellant says conclusively negative plaintiff's claim of good faith, and required the trial court to rule as a matter of law in favor of the tenant: That this same plaintiff had previously filed three suits for possession of the same property. The first suit was on the ground that he wanted possession for the purpose of remodeling. This suit was tried and decided in favor of the tenant. The second suit was for non-payment of rent. The third was a suit brought by Kern against another named defendant in which the present defendant intervened as a real party in interest. Another element stressed by appellant is that Simon bought the house without ever having been inside it (relying on his inspection of the house next door and the representation that No. 53 was physically identical and would be remodeled to suit him); that he had wanted to buy No. 51 but "someone had beat me to purchasing No. 51." Appellant also stresses the small amount of the down payment: $200 on a $12,500 deal, and the loose arrangement in connection with the down payment. Simon said that he made the down payment by giving a check from his sister who lives in New York. The check was for more than the amount of the deposit and Kern gave him change, part in cash and part by Kern's personal check. This witness, the judge

has certified, "was vague as to dates and time. He also seemed to have the months of the year confused." There was also evidence that Simon had undertaken to do some decorating work on two other houses belonging to Kern, and a dispute arose as to when this work was done.[4]

▪ Reviewing the evidence in its entirety, it is clear that we would have no right to say that the decision of the trial judge was "plainly wrong or without evidence to support it." Code 1940, Supp. VII, 11—772(c). On the contrary, it will be seen that there was evidence, ample and substantial, from which the trier of the facts could reasonably have concluded that the sale by Kern to Simon was made in complete good faith, that Simon urgently needed the property for his own use, and was entitled to possession under the Rent Act.

▪ It is true that there were discrepancies in the testimony of plaintiff and his principal witness, and some confusion, too. But as we have previously said discrepancies affect only the weight of the testimony.[5] And in this case the discrepancies were by no means such as to destroy the basic claim that good faith attended the sale and surrounded the purchaser's need of and claim to the property.

▪ Appellant argues that the suing landlord should not prevail because he had filed three earlier suits against appellant and lost. Appellant concedes, as he must, that the adverse rulings in those three cases did not operate as *res judicata* in this later suit and that such rulings were limited to the facts as they existed at the time of the earlier decisions. We so ruled in Black v. Tamamian, D.C.Mun.App., 49 A.2d 547. But appellant says "that the consecutive prosecutions of four suits for possession, all within a period of seven months, raise a strong inference, if not a presumption, of bad faith on the part of the landlord." We do not think the trial judge was wrong in

---

4. Certain checks and receipts were received in evidence to clarify this dispute, and these were the subject of the objection we have referred to in the second paragraph of this opinion.

5. Heindrich v. Dimas-Aruti, D.C.Mun. App., 42 A.2d 138.

accepting the evidence tending to destroy such presumption, especially since a new owner, Simon, was now in the picture and the judgment for possession would have the effect of removing both the landlord Kern and the tenant Sigmond from the house and giving the new owner the right to move into his own property.

■ Another argument advanced by appellant is that because of the confusion as to the day and hour of signing the contract and as to other steps taken by the owner and the purchaser, it must be held that the owner "deliberately conspired" with the purchaser, Simon, "to fabricate an alleged contract of sale in order to achieve his purpose of eviction of the Appellant as a tenant." With this we cannot agree. We think that the most that can be argued is that there was some looseness and some suspicious circumstances attending the sale. And we rule that such circumstances were by no means strong enough to require the trial court or this court sitting in review to hold that there was bad faith in the transaction as a matter of law. The facts, as well as the inferences to be drawn therefrom, were such that reasonable men might quite honestly differ concerning them.

The same is true of a separate argument by which appellant challenges the claim that Simon required the property for his own use. What we have said above demonstrates that the trial judge was fully justified in ruling against this contention of the tenant.

Affirmed.